UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
OSLYN BRUCE,

        Petitioner,                         <u>MEMORANDUM & ORDER</u>

        v.                              04-CV-3453 (NGG)

UNITED STATES OF AMERICA,           **Not For Publication**

        Respondent.
-------------------------------------------------------X
GARAUFIS, United States District Judge.

Before the court is the <u>pro se</u> application for a writ of habeas corpus pursuant to 28

U.S.C. § 2255 of petitioner Oslyn Bruce ("Petitioner" or "Bruce").  Bruce seeks to vacate the

sixty-three month sentence imposed by this court on November 27, 2002 in her underlying

criminal matter, <u>United States v. Oslyn Bruce</u>, 01-CR-595 (NGG), following conviction by a jury

of importing and possession with intent to distribute more than 500 grams of cocaine.  For the

reasons set forth below, Bruce's 2255 petition is DENIED.

**I.    Trial**

The evidence presented at trial before this court on August 19 – 21, 2002 that is relevant

to the Petitioner's motion can be briefly summarized as follows.[1]  Bruce and her son were

arrested on May 8, 2001 after arriving at John F. Kennedy Airport in New York from Guyana.

During a customs examination, Bruce explained that she had traveled to Guyana to pick up a real

estate document for a friend; the document was shown to the customs inspector.  Bruce's luggage

---

[1] Bruce's *first* trial before a jury took place between July 29, 2002 and August 5, 2002.
On August 5, 2002, the jury was unable to reach a verdict and a mistrial was declared.  (<u>See</u>
Docket Entry No. 36).  The second trial, which resulted in the conviction and sentence
challenged here, took place before this court and a jury on August 19, 2002 through August 21,
2002.

was inspected and two suspicious bottles of rum were found within. A field-test performed on the bottles confirmed the presence of cocaine in the bottles, and a subsequent laboratory test confirmed that the bottles contained 685.8 grams of pure cocaine with an approximate retail value of $137,000.00. Bruce was arrested. (See Government Opposition Brief dated March 18, 2005 ("Govt. Opp."), at 1-2).

Following her arrest, Detective Robert Addona, of the New York City Police Department and United States Customs Service ("Customs"), and Special Agent Timothy Flood of Customs interviewed Bruce. During the interview, Bruce reiterated that she traveled to Guyana at the request of her friend, Jenny Graham, in order to retrieve a real estate document for Graham's boyfriend, whom Bruce identified as "Bertram." The envelope Bruce had in her possession that she claimed she picked up in Guyana had "Bertram Abrigo" printed across its front. Bruce, however, informed the Customs officials that she did not know Bertram's last name. In Bruce's phone book, the Customs agents also found a cell phone number listed for a "Bertram," which Bruce maintained was the number of a different person by the name of Bertram. (Id. at 2).

Much of the Petitioner's claims for post-conviction relief implicate the document that she went to Guyana to retrieve and that she turned over to Customs at the time of her arrest. The document was entitled "Certificate of Sale" and reflected the purchase of a condominium in Guyana by Bertram Abrigo for what amounted to $180 in U.S. currency. The document was examined by Agent Flood, who determined that it was a photocopied document, and not the original. Following Bruce's May 8, 2001 arrest, the evidence that had been seized from her was stored in a Customs evidence vault located at 6 World Trade Center, in lower Manhattan. After the terrorist attacks of September 11, 2001, the evidence contained in that vault, including

Bruce's documents, was destroyed. Detective Addona, however, had made photocopies of all of the documentary evidence seized from Bruce on May 8, 2001 for his case file. Thus, at trial, the Government had a photocopy *of the photocopy* of the Certificate of Sale seized that night. (Id. at 2-3).

During trial, the defense presented the testimony of three witnesses. The Petitioner's sister, Mauricia Bruce, testified that Bertram Abrigo, the boyfriend of her friend Jenny Graham, accompanied herself, the Petitioner, and two of their children, to the airport and purchased in cash tickets for the four of them to travel to Guyana. Mauricia Bruce corroborated the Petitioner's explanation for why they went to Guyana: to pick up a real estate document for Bertram. Mauricia Bruce attested that while there, Jenny Graham called the Bruce sisters to ask them to bring back to the United States some items that her brother would drop off. (Id. at 3). Mauricia Bruce's testimony revealed that among the items that Graham's brother delivered were four bottles of rum, two of which Mauricia and Oslyn Bruce brought back with them to the United States. According to Mauricia Bruce, she and her sister inspected the food items Graham's brother delivered to them for transport to the U.S., but that they did not inspect the rum bottles. She denied suspecting that the bottles contained drugs. (Id.).

The defense also called to the stand Corporal Simon Benjamin, a Guyanese law enforcement official, who testified that on May 9, 2001, he arrested Trevor Graham, the brother of Jenny Graham, for possession of narcotics for the purpose of trafficking after recovering two bottles of rum containing cocaine at the Bruce family home in Guyana. (Id. at 3).

The Petitioner took the stand at trial in her own defense. She corroborated her sister's account of events, explaining that while in Guyana, Jenny Graham called the Bruce family home

to request that the Petitioner and her sister bring back some items that her brother would deliver. She further testified that Trevor Graham dropped off several food items and four bottles of rum, and that they took some of the food and two of the bottles with them on their trip back to JFK Airport. Bruce admitted that she lied on her Customs Declaration form when she declared she wasn't bringing food into the United States. She denied that she had ever claimed to Customs officials that she didn't know Bertram's last name, or that she had asserted that the phone number listed for "Bertram" in her phone book was a different Bertram. (Id. at 3-4).

Central to the Petitioner's arguments in support of her 2255 petition is the court's exclusion at trial of an alleged original copy of the "Certificate of Sale." During trial, Detective Addona took the stand and was cross-examined by defense counsel concerning the destruction of relevant evidence in the wake of 9/11. Defense counsel presented what he alleged was the *original* Certificate of Sale, and the accompanying envelope that the Petitioner purportedly retrieved in Guyana. Upon visible inspection comparing this "original" envelope and the photocopy of the envelope that had been placed in the vault, which Addona had kept in his case file, the court determined that the envelope offered by the Petitioner as the "original" was fabricated, as it clearly did not match the photocopied version. The court ultimately ruled that the Defendant/Petitioner Bruce was precluded from using the alleged "original" Certificate of Sale to cross-examine Detective Addona because Addona had not testified to seeing that "original" document. It therefore could not properly be used as impeachment evidence against Addona. (Id. at 4-5).

Petitioner's sister, Mauricia Bruce, testified that she had seen the document Petitioner picked up on behalf of Bertram in Guyana. On the Government's cross-examination of Mauricia

Bruce, she declared that the document she'd seen was an original and not a photocopy. Following this testimony (before Bruce herself took the stand), the Government notified the court and opposing counsel that it if Bruce testified, it would cross-examine her as to whether or not the document she possessed when she was arrested was an original. (Id. at 5). The Government argued to the court that Bruce's credibility was a major issue in the case, and therefore that the Government should be permitted to question Bruce about what happened to the document, to the extent that she claimed she possessed the original on the night of her arrest. Bruce maintained that on the night of her arrest, she was carrying the original document, and that Detective Addona photocopied the document and returned the original to her.[2]

On the issue of whether the Government would be permitted to question Bruce concerning the original document, the court ruled that defense counsel had "opened the door" to this line of questioning. The court informed the parties that it was troubled by the fact that the alleged "original" Certificate of Sale had never been turned over to the Government during Bruce's first trial, as would be required by Rule 16 of the Federal Rules of Criminal Procedure. (Id.).

On cross-examination, Bruce testified that the original Certificate of Sale had been in her possession when she was arrested, that it was photocopied by Customs Agents, and that it was returned to her that night. She attested that the document was in her bag, which she gave to a friend who came to the airport to pick up her son, and that it was in her possession beginning the following day when she was released on bail. Following this testimony, the Government moved

---

[2] Defense counsel did not contest, but nonetheless failed to explain why the envelope that Bruce presented to the court, and maintained was the original *envelope* she had retrieved in Guyana, did not match the photocopied version maintained by Addona.

to admit into evidence on rebuttal for the purpose of impeaching Bruce's credibility, the fabricated envelope that she contended was the original envelope. The court ruled the envelope admissible as impeachment evidence. Defense counsel responded that the purported "original" certificate should also be admitted into evidence if the envelope was coming in, and requested that it be permitted to re-call Bruce to the stand to testify concerning that document. The court denied this request, finding the "original" document inadmissible both under the balancing test of Fed. R. Evid. 403, and as a sanction for violating Fed. R. Crim. P. 16 inasmuch as the defense failed to turn the document over to the Government in compliance with Rule 16. (Id. at 6).

In its rebuttal case, the Government re-called Detective Addona and Special Agent Flood to the stand. Flood testified that subsequent to Bruce's arrest, he had met with her and her counsel and that Bruce never indicated that she was in possession of the original Certificate of Sale. Flood also testified as to the purported original envelope, comparing it to the photocopied version from Detective Addona's file and noting the visible differences between the two. The "fabricated" envelope was received into evidence by the court. Addona reiterated the obvious discrepancies between the photocopied enveloped and the fabricated envelope. He also testified that the envelope that he had actually seized from Bruce on the night of her arrest had been transported in Bruce's suitcase to the vault at the World Trade Center and destroyed on September 11, 2001. (Id. at 6-7).

The jury convicted Bruce of importing and possession with intent to distribute more than 500 grams of cocaine. The court sentenced her to a term of imprisonment of sixty-three months plus four-years supervised release. (See Judgment, 01-CR-595, Docket Entry No. 54).

## II.  Direct Appeal

Bruce appealed her conviction to the Second Circuit, making the following arguments on appeal: (1) that the trial court abused its discretion when it sanctioned the defense for non-compliance with Fed. R. Crim. P. 16 and precluded admission of the alleged "original" Certificate of Sale but not the accompanying envelope; (2) that Detective Addona should have been prohibited from offering expert testimony about narcotics couriers; (3) that an instruction to the jury on conscious avoidance should not have been given; and (4) that an instruction to the jury on false exculpatory statements also should not have been given to the jury.

By summary order, the Second Circuit rejected Bruce's claims on appeal and affirmed her conviction.  United States v. Bruce, 75 Fed. Appx. 849, 2003 WL 22221354 (2d Cir. 2003). First, the Circuit Court found that pursuant to Fed. R. Crim. P. 16(d)(2)(C), the trial court could properly prohibit Bruce from introducing evidence she intended to use in her case-in-chief that she had failed to provide to the Government.  Id. at 851.  Noting the "wide latitude given the trial court by [Rule 16]," the trial court had not abused its discretion in precluding admission of the purported original Certificate of Sale "even when it allowed Bruce's testimony on the original certificate and allowed the government to use the recently produced envelope in its rebuttal case."  Id.  With respect to Detective Addona's expert testimony concerning narcotics operations, the court found this to be proper testimony under Rules 702 and 403 of the Federal Rules of Evidence, and therefore that the trial court had not abused its discretion in allowing it. Id. at 851-52.

Finally, the circuit court found that there was no error in the district court's charges to the jury on conscious avoidance and on false exculpatory statements.  With regard to the former, the

court determined that upon review of the evidence presented at trial in the light most favorable to the Government, the appropriate factual predicate had been offered such that a rational juror could have concluded beyond a reasonable doubt that Bruce consciously avoided knowledge that the rum bottles contained narcotics.  See id. at 852 (citing United States v. Aina-Marshall, 336 F.3d 167, 170 (2d Cir. 2003) (standard for when conscious avoidance charge is appropriate)). With respect to the false exculpatory statements charge, the court likewise found that a factual basis had been presented at trial to support issuance of the false exculpatory statements charge, and that false exculpatory statements are admissible at trial as "'circumstantial evidence of a consciousness of guilt.'"  Bruce, 75 Fed. Appx. at 852-52 (quoting United States v. Johnson, 513 F.2d 819, 824 (2d Cir. 1975)).  Specifically, the court noted that Detective Addona and Agent Flood testified that Bruce "denied knowing Bertram's last name when she had an envelope in her possession listing his last name . . . [and] a mobile telephone number listed for a Bertram in her address book."  Id.  Furthermore, they attested that Bruce denied knowledge of the name of Jenny Graham's brother despite the trial testimony of her sister, Mauricia Bruce, that they had grown up in Guyana with Graham.  Id.

**III.    Petitioner's Claims on Habeas Appeal**

Bruce raises several claims in her Section 2255 petition, each of which will be discussed below.  At the outset, however, I note two important procedural bars that govern my review of this petition.  First, the Second Circuit has made clear that a "2255 motion may not relitigate issues that were raised and considered on direct appeal."  United States v. Perez, 129 F.3d 255, 260-61 (2d Cir. 1997); see also Ferranti v. United States, 6 Fed.Appx. 67, 70 (2d Cir. 2001); Frederick v. United States, No. 01 CV 7826, 2005 WL 2175904, *2 (E.D.N.Y. Sept. 8, 2005)

(Johnson, J.) ("A habeas court will not usually readjudicate claims previously raised and rejected on direct appeal.").   The exception to this general rule is that "[r]econsideration is permitted only where there has been an intervening change in the law and the new law would have exonerated a defendant had it been in force before the conviction was affirmed on direct appeal."  Chin v. United States, 622 F.2d 1090, 1092 (2d Cir. 1980); see also Pitcher v. United States, 371 F.Supp.2d 246, 263 (E.D.N.Y. 2005) (Trager, J.).

Second, a defendant is also barred from raising claims in her § 2255 motion that she failed to raise on direct appeal unless she shows cause for the omission and prejudice resulting therefrom.  Bousley v. United States, 523 U.S. 614, 622-23 (1998).  An exception to this rule, however, is that a defendant may raise for the first time on habeas review a claim of ineffective assistance of counsel that was not raised on direct appeal.  Massaro v. United States,  538 U.S. 500, 504 (2003) ("We hold that an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal.").

A.    *Ineffective Assistance of Counsel*

Petitoner argues that she was deprived her constitutional right to effective assistance of counsel, claiming that her lawyer failed to adequately investigate her background for mitigation purposes, and that he improperly conceded that the alleged "original" Certificate of Sale appeared to be fraudulent.  (See Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("2255 Pet."), at 5).  The trial record does not support Bruce's claim of ineffective assistance of counsel.  She has made no showing that would satisfy the Strickland test, which requires proof that counsel's representation fell below an objective standard of reasonableness,

and that counsel's deficient performance prejudiced the defendant. <u>Strickland v. Washington</u>, 466 U.S. 668 (1984); <u>see also</u> <u>Sarroca v. United States</u>, 250 F.3d 785, 787 (2d Cir. 2001). As I was the presiding judge at trial, I find no merit to Petitioner's claim of ineffective assistance of counsel, and indeed no support for a finding that counsel's performance was objectively unreasonable in any manner. Bruce's trial counsel provided competent representation, and, given the strength of the Government's case against Bruce, any errors on trial counsel's part did not substantially prejudice her. <u>See</u> <u>Strickland</u>, 466 U.S. at 695 ("When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."). Thus, Petitioner's ineffective assistance of counsel claim is denied.

B.    *Admission of the Envelope with Exclusion of the "Original" Document*

Petitioner claims that the exclusion from evidence of the purported "original" Certificate of Sale while allowing the admission of the accompanying "fabricated" envelope*,* violated her Eighth Amendment rights by subjecting her to cruel and unusual punishment, and her Fourteenth Amendment due process right to a fair trial. (<u>See</u> 2255 Pet., at 6-8).[3] As this very question was raised on direct appeal, considered by the Second Circuit, and rejected, Bruce is procedurally barred from re-litigating the issue in her instant 2255 motion. <u>See</u> <u>Perez</u>, 129 F.3d at 260. There has been no intervening change in the law that would have affected her direct appeal, and thus this court will not consider this claim.

---

[3] The Petitioner also submitted several hand-written documents in connection with her habeas petition in which she argued in greater detail the basis of her constitutional claims. These submissions have been reviewed by the court and taken under consideration in deciding Petitioner's motion.

C.    *Conscious Avoidance Jury Instruction*

Bruce has also raised an objection to the conscious avoidance jury charge given at trial. (2255 Pet. at 9). Again, this issue was brought before the Second Circuit and rejected, and re-litigation of the claim in a Section 2255 petition is precluded.

D.    *Alleged Governmental Misconduct*

Petitioner claims that she was denied a fair trial because of prosecutorial misconduct, namely the fact that the Government "improperly appealed to the juries [sic] passion and prejudices" by calling Bruce a *liar* "numerous times" during trial. (2255 Pet. at 9). This claim is procedurally barred because it could have been raised on direct appeal, but was not. Bruce has made no showing of cause for the procedural default, or of actual prejudice resulting therefrom, and thus this claim is procedurally barred. Bousley, 523 U.S. at 622-23. Notwithstanding the procedural bar, this claim also fails on the merits. To the extent that any improper statements were made by the Government during trial, these comments did not rise to the level of a constitutional violation, and thus Petitioner is not entitled to habeas relief on this ground. See 28 U.S.C. § 2255 (section 2255 petitioner may claim "the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States").

In Donnelly v. DeChristoforo, 416 U.S. 637 (1974), the Supreme Court addressed a claim on habeas review arising from improper remarks made by the prosecution. Considering the improper statements in the context of the entire trial, and recognizing "'that a judgment of conviction is commonly the culmination of a trial which includes testimony of witnesses, argument of counsel, receipt of exhibits in evidence, and instruction of the jury by the judge,'" the Court held that the statements did not render the defendant's trial "'so fundamentally unfair

as to deny him due process." Donnelly, 416 U.S. at 645 (quoting in Cupp. v. Naughten, 414 U.S. 141, 146-47 (1973) (reviewing improper jury instruction in context of entire trial)). The Second Circuit has interpreted this standard to require a showing that improper remarks by the prosecution taken in the context of the entire trial resulted in substantial prejudice to the defendant. See United States v. Thomas, 377 F.3d 232, 244 (2d Cir. 2004); see also United States v. Young, 470 U.S. 1, 12 (1985) ("[T]he remarks must be examined within the context of the trial to determine whether the prosecutor's behavior amounted to prejudicial error. In other words, the Court must consider the probable effect the prosecutor's response would have on the jury's ability to judge the evidence fairly.") (citing Lawn v. United States, 355 U.S. 339 (1958)).

Under the standard established by the Supreme Court, Bruce's claim of prosecutorial misconduct must fail. Her credibility was a major issue in the trial. Thus, although it *may* have been unseemly for the Government to call her a liar, it was not excessive or inflammatory, but rather a permissible way to characterize disputed trial testimony. United States v. Peterson, 808 F.2d 969, 977 (2d Cir. 1987) ("Use of the words 'liar' and 'lie' to characterize disputed testimony when the witness's credibility is clearly in issue is ordinarily not improper unless such use is excessive or is likely to be inflammatory."). The comments by the Government were "plainly directed toward the credibility of the witness[ ] and [were] within the bounds of propriety." Id.

Moreover, even assuming arguendo that there was some degree of impropriety in the Government's statements, Bruce was not substantially prejudiced, and thus her conviction will not be reversed on habeas appeal. There was strong evidence of the Petitioner's guilt presented at trial, which is illustrated by the Second Circuit's affirmance of this court's issuance of a false

exculpatory statement charge to the jury. The references to Bruce being a liar, when considered in the context of the entire trial, did not rise to the level of a denial of due process. Bruce received a fair trial, and her conviction will not be overturned on this ground.

E.  *Blakely v. Washington*

By letter dated August 9, 2004, Bruce asked this court to "review, if in anyway, Blakely v. Washington, would or could apply in my case." (See Docket Entry No. 4). The court does so now. In 2004, the Supreme Court decided Blakely v. Washington, 542 U.S. 296 (2004), and held that imposition of sentences greater than "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant" violates a criminal defendant's Sixth Amendment rights. 542 U.S. at 303-304. Following Blakely, in United States v. Booker, 543 U.S. 220 (2005), the Court held that if the Federal Sentencing Guidelines remained mandatory, they would run afoul of the prohibition set forth in Blakely; the Court therefore excised the provision of the Federal Sentencing Act that made the Guidelines mandatory. 543 U.S. at 244.

In the instant matter, Bruce requests that this court consider the applicability of Blakely, and by implication Booker, to her 2255 petition. Precedent of the Second Circuit and this district, however, direct that neither Blakely nor Booker can support a collateral attack of Petitoner's conviction because those holdings do not apply retroactively. In Carmona v. United States, 390 F.3d 200, 202 (2d Cir.2004), the Second Circuit held that a Blakely claim will not support a second or successive 2255 petition because the Supreme Court has not held that Blakely applies retroactively to cases on collateral review. In Green v. United States, 397 F.3d 101, 103 (2d Cir. Feb. 2, 2005), the circuit court reached the same conclusion with respect to

Booker.  Interpreting these and other relevant decisions, several judges of this district have come to the conclusion that neither Blakely nor Booker apply retroactively to *any* collateral challenges to judgments that were final at the time those cases were decided.  See Hamdani v. United States, 2005 WL 419727 (E.D.N.Y. Feb. 22, 2005) (Trager, J.); Rodriguez v. United States, No. 04-CV-1158, 2005 WL 755769, at *4 (E.D.N.Y. April 4, 2005) (Block, J.).  Moreover, the Second Circuit has now explicitly held that Booker does not apply retroactively to collateral cases.  Guzman v. United States, 404 F.3d 139, 144 (2d Cir. 2005) ("Booker is not retroactive, i.e., it does not apply to cases on collateral review where the defendant's conviction was final as of January 12, 2005, the date that Booker issued.").

Pursuant to this precedent, application of Blakely and/or Booker to the Petitioner's case is squarely foreclosed.  For the purposes of 28 U.S.C. § 2255, a conviction becomes "final" when the Supreme Court affirms a conviction on the merits on direct review, or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires.  Clay v. United States, 537 U.S. 522 (2003). The rules for the United States Supreme Court state that a petition for a writ of certiorari to review a decision by a United States Court of Appeals must be filed within ninety days after entry of the judgment.  Id. at 525 (noting that time in which defendant could have petitioned for certiorari expired ninety days after the Court of Appeals affirmed the conviction); Sup.Ct. R. 13(1).  Accordingly, Bruce's conviction became final on or about December 26, 2003, ninety days after the Second Circuit affirmed her conviction.  Thus, her conviction was final on the dates that both Blakely and Booker issued – June 24, 2004 and January 12, 2005, respectively.  Bruce cannot, therefore, rely on Blakely or Booker to collaterally attack her conviction or sentence.

14

**IV.     Conclusion**

For the reasons set forth above, Petitioner's 28 U.S.C. § 2255 petition is DENIED.  The

Clerk of Court is directed to close this case and to mail a copy of this Memorandum and Order to

the <u>pro</u> <u>se</u> petitioner.

SO ORDERED.

Dated: June 12, 2006                                    _____/s/_____
        Brooklyn, New York                             NICHOLAS G. GARAUFIS
                                                       United States District Judge